**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| KAREN CAMPBELL MCGAGH, | |
| v. | Civil Action No. CCB-22-504 |
| BALTIMORE COUNTY, *et al.* | |

## MEMORANDUM

     Pro se plaintiff Karen McGagh claims that her constitutional rights were violated by Baltimore County, the Baltimore County State's Attorney's Office ("BCSA"), the Baltimore County Police Department ("BCPD"), Assistant State's Attorney ("ASA") Adam Lippe, Detective Brian Wolf, Officer Scott Shellenberger, and ten "Doe" defendants when they allegedly conspired to ignore her sexual assault police report and instead falsely charged her with making a false statement to a police officer and perjury. Now pending before the court is a motion to dismiss submitted by defendants Baltimore County and BCPD. Ms. McGagh opposed the motion, and the moving defendants did not reply. No oral argument is necessary. *See* Local Rule 105.6. For the following reasons, the defendants' motion will be granted.

## BACKGROUND

     Ms. McGagh alleges that, since 2017, the defendants have "engaged in a conspiracy to frame [her] for perjury and false statement to a police officer after she reported sexual assault, depriving her of her constitutional rights, and causing severe harm." Compl. ¶ 10, ECF 1. Ms. McGagh was allegedly assaulted by an employee at a Verizon Wireless store, and she claims that much of the incident was recorded on camera. *Id.* ¶¶ 11-12. She filed criminal charges against the employee, but those charges were eventually dropped and Ms. McGagh was instead charged with making a false statement to a police officer and perjury by affidavit. *Id.* ¶ 13.

Defendants ASA Lippe and Detective Wolf investigated the charges against Ms. McGagh. *Id.* ¶ 14. Ms. McGagh alleges that Lippe and Wolf worked together outside of their governmental duties; Wolf ran his own private security firm and Lippe worked for Wolf's firm as an instructor. *Id.* ¶¶ 16-19. According to Ms. McGagh, this business relationship was "undisclosed" and "creat[ed] a conflict of interest with their investigation and prosecution work as paid employees of Baltimore County." *Id.* ¶¶ 16, 18-19. Ms. McGagh claims that Lippe and Wolf "conspired to falsify evidence against [her]," including testimony from an allegedly fictional "Dr. Kohn." *Id.* ¶¶ 20-22.[1] She also claims that "all Defendants deliberately withheld exculpatory evidence, as well as fabricated false reports and other evidence, thereby misleading and misdirecting the criminal prosecution of Ms. McGagh." *Id.* ¶ 54.

Ms. McGagh was sentenced to eight-and-a-half years in prison for making a false statement to a police officer and perjury by affidavit. *Id.* ¶ 29. But her conviction was overturned by the Maryland Court of Special Appeals in March 2020.[2] *Id.* ¶ 30. The State then appealed to the Court of Appeals,[3] which reversed the Court of Special Appeals and reinstated her conviction. *Id.* ¶ 32. Ms. McGagh claims that the Court of Appeals's decision was based on false evidence submitted by BCSA. *Id.* ¶¶ 31-32. She also alleges that ASA Lippe made false statements during her resentencing hearing, including that she had contacted him on a weekly basis. *Id.* ¶¶ 36-38.

Before her conviction was overturned, Ms. McGagh had been granted parole by the Maryland Parole Board, and upon returning to prison she expected to finish serving the sentence she would have had under that grant of parole. *Id.* ¶ 39. Instead, however, she was informed that

---

[1] Ms. McGagh admits that she was seen by doctors named Lois Conn and Janet Cohn, but claims that both of them deny making the statements attributed to "Doctor Kohn." Compl. ¶ 23.
[2] The Maryland Court of Special Appeals is now known as the Appellate Court of Maryland.
[3] The Maryland Court of Appeals is now known as the Supreme Court of Maryland.

"her parole had been 'invalidated.'" *Id.* ¶ 40. She claims that David Blumberg, Chairman of the Maryland Parole Board, told her attorney that he had been pressured by ASA Lippe and BCSA to invalidate her parole. *Id.* ¶ 41. A new parole hearing was held, at which ASA Lippe allegedly convinced an unnamed "victim" (presumably the Verizon employee) to testify against Ms. McGagh. *Id.* ¶¶ 45-46. Ms. McGagh was eventually paroled seven weeks thereafter. *Id.* ¶ 47.

Ms. McGagh alleges that the conspiracy against her was part of BCPD's and BCSA's "policy of not investigating allegations of assault by women," which she claims is "well documented." *Id.* ¶¶ 26-27, 107; *see, e.g.*, *id.* ¶¶ 58, 62, 65, 72, 78. As evidence of this policy, Ms. McGagh states that "[a]n independent team of investigators found that [BCPD] and [BCSA] were deficient in twenty-areas [sic] of investigating and prosecuting assaults against women," and that there were "numerous complaints" on the subject. *Id.* ¶¶ 105, 107. The policy allegedly manifested in Detective Wolf, "with his supervisor's knowledge, refus[ing] to investigate some crimes, and fram[ing] other defendants"; "ASA Lippe was a willing participant in this conspiracy." *Id.* ¶ 108.

Ms. McGagh brings fifteen counts, alleging violations of the federal constitution (Counts I-V, VIII, IX, & XV), conspiracy (Counts VI & VII), and state law torts (Counts X-XIV).[4] The allegations do not specifically differentiate which claims are asserted against which defendants. Baltimore County and BCPD moved to dismiss, contending that Ms. McGagh's complaint fails to state any viable claims against them.

## LEGAL STANDARD

To survive a motion to dismiss, a complaint must contain factual allegations that "raise a right to relief above the speculative level on the assumption that all the allegations in the complaint

---

[4] Ms. McGagh styles Count XV as "state law claim freedom of speech," but cites federal law in that Count, so the court construes the Count as a First Amendment claim.

are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Additionally, although courts "must view the facts alleged in the light most favorable to the plaintiff," they "will not accept 'legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments'" in deciding whether a case should survive a motion to dismiss. *U.S. ex rel. Nathan v. Takeda Pharm. North Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013) (quoting *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)). When a plaintiff is pro se, the court must hold their pleadings "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

## ANALYSIS

Baltimore County and BCPD argue that they should be dismissed as defendants because BCPD is not an entity that can be sued, and because Ms. McGagh's allegations do not include any specific facts that would establish either defendant's liability. *See* Mot., ECF 25-1. Ms. McGagh responds that the defendants' motion is untimely and that she has stated claims against the defendants. The court will consider the timeliness of the defendants' motion before determining whether BCPD can be sued, and will then review the complaint to decide whether any claims have been stated against the moving defendants.

## I.      Timeliness

A Rule 12(b) motion must be filed before a responsive pleading is due. Fed. R. Civ. P. 12(b). And a defendant generally must serve an answer "within 21 days after being served with the summons and complaint." *Id.* 12(a)(1)(A)(i). When Ms. McGagh filed her federal complaint, her state criminal proceedings were still pending, so the court directed her to show cause why the civil case should not be dismissed without prejudice or stayed until the criminal proceedings were resolved. Show Cause Order, ECF 5. During the time Ms. McGagh was given to respond to the court's order, Baltimore County and BCPD moved for an extension of time to answer the complaint. Mot. for Extension, ECF 7. Ms. McGagh responded, and the court stayed the case until her Writ of Innocence hearing and granted the defendants' motion for an extension until eight days after the hearing. Stay Order, ECF 12. The defendants timely filed their initial motion to dismiss. *See* First Mot. to Dismiss, ECF 14. But Ms. McGagh's mailing address was incorrect, and she was not served with the motion. Mail Return, ECF 17. So the court denied the motion without prejudice and ordered Ms. McGagh to update her address, after which the defendants were given twenty-eight days to renew their motion to dismiss. Address Order, ECF 19. Ms. McGagh updated her address on August 21, 2023, Notice of Change of Address, ECF 21, and the defendants re-filed their motion to dismiss on September 11, 2023, Mot. The defendants therefore filed their motion within the time allowed by court-approved extensions, and the motion is timely.

## II.      BCPD's Status

BCPD argues that it cannot be sued because it "does not exist as a legal entity" under Maryland law. Mot. at 3. State law determines an entity's capacity to be sued, and, under Maryland law, "absent a statutory or constitutional provision creating a government agency, an 'office' or 'department' bears no unique legal identity, and thus, it cannot be sued." *Owens v. Balt. City*

*State's Attys. Off.*, 767 F.3d 379, 393 (4th Cir. 2014) (citing Fed. R. Civ. P. 17(b) and *Boyer v. State*, 323 Md. 558, 572 n.9 (1991)). Courts in this district have consistently held that BCPD is not sui juries (i.e., has no independent legal existence) and is not amenable to suit. *McCann-McCalpine v. Detective Fisher of BCPD*, No. 23-cv-2039-BAH, 2024 WL 3427211, at *6 (D. Md. July 12, 2024); *Borkowski v. Balt. Cnty.*, 414 F. Supp. 3d 788, 804 (D. Md. 2019). Ms. McGagh offers no argument to justify departing from this well-accepted holding, and the court will therefore grant the motion as to BCPD.[5] Although BCSA has not filed a motion seeking dismissal on this ground, the law is equally clear that it is similarly not sui juris, *Owens*, 767 F.3d at 393-95, and the court will also dismiss it as a defendant.

## III.     Failure to State a Claim

### A.     Federal Constitutional Claims

"Section 1983 provides that '[e]very person,' who, under color of state law causes the violation of another's federal rights shall be liable to the party injured by his conduct." *Owens*, 767 F.3d at 402 (alteration in original) (citing 42 U.S.C. § 1983). In *Monell v. New York City Department of Social Services*, the Supreme Court ruled that municipalities are suable under Section 1983, 436 U.S. 658, 690 (1978), but expressly cabined their liability by holding that a county or municipality "is liable only for its *own* illegal acts," *Owens*, 767 F.3d at 402 (citing *Monell*, 436 U.S. at 691). Accordingly, local governments "are not vicariously liable under [Section] 1983 for their employees' actions." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citing

---

[5] Courts often permit amendment to substitute the proper defendant, Baltimore County, for BCPD, particularly where a plaintiff is pro se. *McCann-McCalpine*, 2024 WL 3427211, at *6; *see Truant v. Persuhn*, No. 23-cv-579-RDB, 2023 WL 8600552, at *1 n.1 (D. Md. Dec. 12, 2023). Ms. McGagh does not distinguish between defendants when alleging the counts in her complaint, so the court will simply construe counts as alleged against Baltimore County where appropriate, and impute allegations about BCPD to Baltimore County.

*Monell*, 436 U.S. at 691). So to state a viable Section 1983 claim against Baltimore County, Ms. McGagh must adequately allege that it "follows a custom, policy, or practice by which local officials violate a plaintiff's constitutional rights." *Owens*, 767 F.3d at 402 (citing *Monell*, 436 U.S. at 694).

> A policy or custom for which a municipality may be held liable can arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

*Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (quoting *Carter v. Morris*, 164 F.3d 215, 217 (4th Cir. 1999)).

Ms. McGagh's policy allegations are sparse. She claims that "BCPD . . . had a policy of not investigating allegations of assault by women," Compl. ¶ 26, which is "well documented," *id.* ¶ 27, but her only non-conclusory allegations about the "policy" are that "[a]n independent team of investigators found that [BCPD] and [BCSA] were deficient in twenty-areas [sic] of investigating and prosecuting assaults against women," and that there were "numerous complaints" on the subject. *Id.* ¶¶ 105, 107; *see* Opp'n to Mot. at 11-12, ECF 37 (describing the same allegations) ("Opp'n"). In her opposition, Ms. McGagh also identifies one instance of the County settling claims brought by a woman who claimed that the County sent police offers to her home to discourage her from filing charges against her assaulters. Opp'n at 22. Construing these claims as liberally as possible, BCPD's poor handling of assaults against women could implicate a failure to train officers, or a widespread and persistent practice. *Lytle*, 326 F.3d at 473-74. But Ms. McGagh offers no specifics to show that the alleged defects were due to a failure to train, nor that citizens' constitutional rights were frequently being violated by BCPD. *See id.* at 473 ("'[I]solated incidents' of unconstitutional conduct by subordinate employees are not sufficient to

establish a custom or practice for § 1983 purposes. Rather, there must be 'numerous particular instances' of unconstitutional conduct in order to establish a custom or practice." (quoting *Carter*, 164 F.3d at 220 and *Kopf v. Wing*, 942 F.2d 265, 269 (4th Cir. 1991))). Even if her allegations were adequately detailed, however, Ms. McGagh's complaint suffers from a more fundamental flaw.

A municipality will only be liable under Section 1983 when its "official policy or custom" "causes the deprivation." *Id.* at 471 (quoting *Carter*, 164 F.3d at 218). Here, Ms. McGagh alleges that she was "deprived . . . of her constitutional right to a fair trial," Compl. ¶ 53, "falsely imprisoned in violation of her constitutional rights," *id.* ¶ 59, coerced to falsely confess, *id.* ¶ 69, "denied . . . reasonable bail," *id.* ¶ 75, "abus[ed]" by being placed in prison, *id.* ¶¶ 80-84, and "denied . . . the right to access to courts," *id.* ¶ 101. The gravamen of all these allegations is that Ms. McGagh was wrongfully charged with perjury and making false statements, improperly prosecuted for those charges, and eventually imprisoned based on illegitimate evidence. Those events, although reprehensible if true, bear no causal relation to BCPD's alleged policy of deficiently investigating and prosecuting assaults against women. Ms. McGagh offers no allegations to support the theory that any Baltimore County entity had a policy of malicious or vengeful prosecutions, and in fact admits that she "is the only woman to be sent to prison for reporting assault." *Id.* ¶ 27; *see Lytle*, 326 F.3d at 473; *Palma v. Montgomery Cnty.*, 598 F. Supp. 3d 288, 297-98 (D. Md. 2022). Furthermore, on Ms. McGagh's own allegations, she was singled out for retribution by the individual defendants; many of her injuries allegedly stemmed from Lippe and Wolf conspiring "to exact revenge on Ms. McGagh, [because she] discovered the corruption in the State's Attorney's office and the undisclosed business relationship between

Defendants Lippe and Wolf." *Id.* ¶ 42; *see* Opp'n at 8 (arguing that the relationship between ASA

Lippe and Detective Wolf "is at the heart and soul of this case").

Because Ms. McGagh has not adequately alleged that she was injured by a custom, policy,

or practice of Baltimore County, her constitutional claims against it will be dismissed (Counts I-

V, VIII, IX, & XV).

### B.    Federal Conspiracy Claims

Ms. McGagh brings conspiracy claims under Section 1983 and Section 1985. To

adequately plead a conspiracy claim under either provision, the plaintiff must at least allege that

the defendants "acted jointly in concert and that some overt act was done in furtherance of the

conspiracy which resulted in [the plaintiff's] deprivation of a constitutional right." *Hinkle v. City*

*of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996) (citing *Hafner v. Brown*, 983 F.2d 570, 577 (4th

Cir. 1992)) (Section 1983 conspiracy); *White v. City of Annapolis*, 439 F. Supp. 3d 522, 541 (D.

Md. 2020) (quoting *Facey v. Dae Sung Corp.*, 992 F. Supp. 2d 536, 540 (D. Md. 2014)) (stating

similar elements for Section 1985 conspiracy). Conspiracy claims must be pled with "concrete

supporting facts," and will be rejected "whenever the purported conspiracy is alleged in a merely

conclusory manner." *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011)

(quoting *Simmons v. Poe*, 47 F.3d 1370, 1377 (4th Cir. 1995)).

With regard to Baltimore County, Ms. McGagh's conspiracy claims are entirely

conclusory. She offers no explanation as to how BCPD or the County, as opposed to the individual

defendants who were their employees, joined in the alleged conspiracy or took any actions to

further it. She alleges that the conspiracy "was undertaken pursuant to the policy and practice of

the Baltimore County Police Department," Compl. ¶¶ 91, 99, but, as explained, she has not

adequately alleged the existence of any relevant policy that deprived her of her constitutional

rights. And she claims that the conspiracy "was tacitly ratified by policy-makers for the City of Baltimore County [sic] with final policymaking authority," *id.* ¶ 99, but she never explains who these policymakers were or how they ratified the alleged actions of the individual defendants. Ms. McGagh cannot extend her conspiracy allegations to Baltimore County through its employees, and her conclusory allegations that the County was part of the alleged conspiracy are insufficient. Counts VI & VII will be dismissed as to Baltimore County.

### C.    State Law Claims

Ms. McGagh brings several claims under state tort law and, because she does not specify to which defendants each count applies, the court will assume that she alleges all counts against all defendants.

The Maryland Local Government Tort Claims Act ("LGTCA") requires a plaintiff seeking to bring tort claims against a local government to provide notice of those claims within one year of her injury. Md. Code Ann., Cts. & Jud. Proc. § 5-304(b)(1); *Johnson v. Balt. Police Dep't*, 452 F. Supp. 3d 283, 315 (D. Md. 2020). A plaintiff must affirmatively plead compliance with the notice requirement or face dismissal. *Hansen v. City of Laurel*, 420 Md. 670, 694 (2011). Ms. McGagh does not allege that she complied with the notice requirements of the LGTCA, and her state law claims against the County must therefore be dismissed. Furthermore, the LGTCA merely requires a local government to pay for a judgment against its employee under specific circumstances; it does not waive a local government's immunity from direct liability. *Doe v. Comm'y Coll. of Balt. Cnty.*, 595 F. Supp. 3d 392, 411-12 (D. Md. 2022); *Coit v. Nappi*, 248 Md. App. 44, 64 (2020). Ms. McGagh's state law claims fail for this reason too.

**IV.     Remaining Defendants**

It is unclear from the record whether the individual defendants have been properly served with Ms. McGagh's complaint. Ms. McGagh will be ordered to submit proof of service as to the individual defendants in accordance with Fed. R. Civ. P. 4(l)(1), or to request the court's assistance with effectuating service, *see* Fed. R. Civ. P. 4(c)(3), within twenty-eight days.

**CONCLUSION**

For the above-stated reasons, BCPD and Baltimore County's motion to dismiss will be granted. BCSA will also be dismissed as a defendant. Ms. McGagh must provide proof of service as to the individual defendants within twenty-eight days.

 

 

   8/12/2024                                            /s/                          
Date                                                          Catherine C. Blake
United States District Judge