## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| KAREN CAMPBELL MCGAGH, | * |
| Plaintiff, | * |
| v. | * |
| ADAM D. LIPPE ET AL., | *    Civil No. 22-504-BAH |
| Defendants. | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### <u>MEMORANDUM OPINION</u>

Karen Campbell McGagh ("Plaintiff" or "McGagh") brings fifteen counts, alleging violations of the federal constitution (Counts I–V, VIII, IX, & XV), conspiracy (Counts VI & VII), and state law torts (Counts X-XIV) related to her state court conviction for making a false statement to a police officer and perjury.[1] *See generally* ECF 1. The late Judge Blake summarized the factual allegations in her August 12, 2024 memorandum opinion dismissing claims against Baltimore County and the Baltimore County State's Attorney's Office. *See* ECF 40. The Court will not repeat them here (except where necessary) and assumes familiarity with the allegations. Remaining are Defendants State's Attorney Scott Schellenberger ("Shellenberger"), Assistant State's Attorney Adam Lippe ("Lippe"), Baltimore County Police Detective Brian Wolf ("Wolf"), and Doe Defendants 1–10. Pending before the Court are a number of motions, most of which are filed by McGagh, and some of which include memoranda of law and exhibits.[2] These include

---

[1] The conviction was initially overturned by Maryland's intermediate appellate court, but was then reinstated and affirmed by the Supreme Court of Maryland. *See* ECF 1, at 4 ¶¶ 30–32; *State v. McGagh*, 244 A.3d 1117, 1139 (Md. 2021).

[2] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

several motions for leave to amend, including (1) a motion for leave to amend the complaint to identify Does 1-10 and include new evidence, ECF 57, which McGagh supplemented at ECF 66; (2) a motion for leave to file a second amended complaint, ECF 72, which McGagh appears to have withdrawn at ECF 75[3] but nonetheless supplemented at ECF 76; and (3) a motion for leave to file a second amended complaint, ECF 79.  Shellenberger filed a motion to dismiss for failure to state a claim.  ECF 77.  McGagh did not file an opposition, but her most recent motion for leave to file an amended complaint appears to have been filed in response.  *See* ECF 79.  Shellenberger did not file a response to McGagh's motion for leave to amend.  McGagh has also filed: (1) a motion to stay *Heck*-barred claims in part and permit non-*Heck* claims to proceed, ECF 73; (2) a motion to compel service, ECF 58; (3) a motion to consolidate cases, ECF 59, which McGagh supplemented at ECF 65; (4) a motion for extension of time to serve Lippe and for alternative service, ECF 80, which she amended, ECF 81; (5) a motion "for in camera review of withheld OAG documents," "production pursuant to the crime-fraud exception," "sanctions for fraudulent [Maryland Public Information Act] production," and "disqualification of Wendy L. Schiff as defense counsel," ECF 87; (6) an "emergency motion for sanctions for spoliation of evidence, compelled sworn disclosure of records disposition, and in camera review of withheld and redacted materials," ECF 88; and (7) an "emergency motion for sanctions for spoliation of evidence," ECF 90.  Lippe filed a motion for a protective order, ECF 84, which McGagh opposed, ECF 85, and to which McGagh filed a supplemental opposition, ECF 86.

---

[3] The docket entry text indicates for the notice of withdrawal refers to the motion filed at ECF 72, but motion itself does not mention which motion for leave to amend McGagh sought to withdraw. Regardless, both motions will be denied as moot as McGagh later filed another motion for leave to file an amended complaint.

The Court addresses these motions in turn.  As an initial matter, the first two motions for leave to amend, ECF 57 and 72, and the motion for extension of time and alternative service, ECF 80, will be denied as moot because they are superseded by later-filed motions.  McGagh's motion to consolidate, ECF 59, will also be denied as moot as each of the cases McGagh seeks to consolidate with the above-captioned case have been dismissed.

I.    **MOTION FOR LEAVE TO AMEND AND MOTION TO DISMISS**

Shellenberger moves to dismiss the original complaint, ECF 1, which is still the operative complaint.  *See* ECF 77-1, at 1.  Shellenberger notes that his "name does not appear other than in the caption, the preamble, and the section about parties. There is no allegation of any specific wrongdoing about him." *Id.* at 7.  Nevertheless, Shellenberger advances arguments on the merits to the extent that the claims "against him arise out of his function as the State's Attorney, and the employer of Mr. Lippe." *Id.*  McGagh admits that the original complaint "mentioned Shellenberger only in the caption and one inaccurate sentence." ECF 79, at 2.  She seeks to fix this through amending the complaint. *See id.*  While the filing of a motion for leave to amend can moot a pending motion to dismiss, given how many times McGagh has attempted to amend,[4] the Court finds it prudent to address each motion on their own merits.

---

[4] The Court notes that McGagh has also unsuccessfully attempted to file two dozen suits related to this case.  *See McGagh v. Fader*, Civ. No. 24-2534-MJM (dismissed for failure to supplement IFP motion or pay filing fee); *McGagh v. Judith Ensor*, Civ. Nos. 24-2758-MJM and 24-2963-MJM (consolidated cases dismissed for not filing amended IFP motion); *McGagh v. Fader*, Civ. No. 25-989-LKG (dismissed after IFP denied and filing fee not paid); *McGagh v. Verizon Inc.*, Civ. No. 25-2698-DLB (dismissed for failure to properly file corrected IFP motion); *McGagh v. The State of Maryland*, Civ. No. 25-3538-BAH (dismissed after IFP denied and filing fee not paid); *McGagh v. Julie Ensor*, Civ. No. 25-3539-BAH (dismissed after IFP denied and filing fee not paid); *McGagh v. Wolf Security, LLC*, Civ. No. 25-3544-BAH (dismissed after IFP denied and filing fee not paid); *McGagh v. Hilton*, Civ. No. 25-3543-BAH (dismissed after IFP denied and filing fee not paid); *McGagh v. The Maryland Supreme Court*, Civ. No. 25-2681-BAH (dismissed after IFP denied and McGagh requested refund of filing fee); *McGagh v. Verizon Inc.*, Civ. No. 25-3536-BAH (dismissed after IFP denied and McGagh requested refund of filing fee); *McGagh*

3

### A. The Court Will Grant Shellenberger's Motion to Dismiss.

Shellenberger argues that he is protected by the doctrine of prosecutorial immunity. *See* ECF 77-1, at 7–8. He contends that any allegation of deliberate misconduct, malice, or other ethical violations are not sufficient to overcome such immunity. *See id.* at 8–10. He further argues that to the extent Plaintiff's complaint can be read to bring a failure to supervise or train, he still enjoys absolute prosecutorial immunity. *Id.* at 10–11. Next, Shellenberger argues that Plaintiff's state tort claims are barred by statutory immunity, and that Plaintiff has not sufficiently alleged malice or gross negligence to overcome statutory immunity. *Id.* at 11–14.

1. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) governs dismissals for failure to "state a claim upon which relief can be granted." In considering a motion under this rule, courts discount legal conclusions stated in the complaint and "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court then draws all reasonable inferences in favor of the plaintiff and considers whether the complaint states a plausible claim for relief on its face. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). "A claim has facial

*v. Verizon Wireless LLC*, Civ. No. 26-186-BAH (dismissed after failure to pay fee or file completed IFP motion); *McGagh v. Julie Ensor*, Civ. No. 25-2686-BAH (dismissed for failure to file civil cover sheet); *McGagh v. Baltimore County State's Attorney*, Civ. No. 24-2533-MJM (dismissed for failure to file complaint with original signature); *McGagh v. Baltimore County*, Civ. No. 22-517-CCB (dismissed as duplicative of Civ. No. 22-504-BAH); *McGagh v. Judith Ensor*, Civ. No. 25-158-MJM (dismissed for lack of subject matter jurisdiction); *McGagh v. Judith Ensor*, Civ. No. 25-2690-JRR (dismissed for lack of subject matter jurisdiction); *McGagh v. Judith Ensor*, Civ. No. 25-3540 (dismissed for lack of subject matter jurisdiction); *McGagh v. Mead*, Civ. No. 18-3794-PX (dismissed for lack of subject matter jurisdiction); *see also McGagh v. Lippe*, Civ. No. 18-3795-PX (partially dismissed and partially administratively closed based on *Younger* doctrine); *McGagh v. Feenstra*, Civ. No. 18-3796-PX (partially dismissed and partially administratively closed based on *Younger* doctrine); *McGagh v. Heller*, Civ. No. 18-3797-PX (partially dismissed and partially administratively closed based on *Younger* doctrine).

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

"The complaint must offer 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'" *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). At the same time, a "complaint will not be dismissed as long as [it] provides sufficient detail about [the plaintiff's] claim to show that [the plaintiff] has a more-than-conceivable chance of success on the merits." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014).

The Court is mindful of its obligation to construe liberally a complaint filed by a self-represented litigant. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nonetheless, liberal construction does not mean that this Court can ignore a clear failure in the pleading to allege facts which set forth a cognizable claim. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990); *see also Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) (stating a district court may not "conjure up questions never squarely presented").

## 2. Prosecutorial Immunity

Maryland's State's Attorneys are quasi-judicial officers who enjoy absolute immunity when performing prosecutorial functions, as opposed to investigative or administrative ones. *See Imbler v. Pachtman*, 424 U.S. 409, 422-23 (1976); *see also Kalina v. Fletcher*, 522 U.S. 118, 127 (1997); *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993); *Nero v. Mosby*, 890 F.3d 106, 118 (4th Cir. 2018); *Springmen v. Williams*, 122 F.3d 211 (4th Cir. 1997). Absolute immunity is designed to protect judicial process. Thus, the inquiry is whether a prosecutor's actions are closely associated with judicial process. *See Burns v. Reed*, 500 U.S. 478, 479 (1991) (citing *Imbler*, 424 U.S. at 422–23). The Court must use a "functional approach" to "determine whether a particular

5

act is 'intimately associated with the judicial phase.'" *Nero*, 890 F.3d at 118 (quoting *Imbler*, 424 U.S. at 430). The Fourth Circuit stated in *Nero*: "A prosecutor acts as an advocate when she professionally evaluates evidence assembled by the police, decides to seek an arrest warrant, prepares and files charging documents, participates in a probable cause hearing, and presents evidence at trial." 890 F.3d at 118 (citing *Buckley*, 509 U.S. at 273; *Kalina*, 522 U.S. at 130; *Burns*, 500 U.S. at 493; *Imbler*, 424 U.S. at 431). "Actions taken by a prosecutor *after* a probable-cause determination has been made generally are classified as 'advocative' functions[.]" *Annappareddy v. Pascale*, 996 F.3d 120, 139 (4th Cir. 2021) (citing *Nero*, 890 F.3d at 118). In applying this functional approach, courts in the Fourth Circuit consider only "'the nature of the function performed,' without regard to 'the identity of the actor who performed it,' 'the harm that the conduct may have caused,' or even 'the question whether it was lawful.'" *Nero*, 890 F.3d at 118 (quoting *Buckley*, 509 U.S. at 269, 271).

Having reviewed the allegations in the complaint, the Court agrees that the allegations against Shellenberger—and those raised against other prosecutors like Lippe, for that matter—fall squarely within the scope of prosecutorial immunity. *See, e.g.*, ECF 1, at 2 ¶ 10 (alleging that "defendants engaged in a conspiracy to frame Ms. McGagh for perjury and false statement to a police officer after she reported sexual assault, depriving her of her constitutional rights, and causing severe harm"); *id.* at 3 ¶ 13 ("Defendant BCSA's office dropped the charges against the Verizon wireless salesman and charged Ms. McGagh with false statement to a Police Officer and perjury by affidavit."); *id.* ¶ 20 ("Defendants Wolf[] and Lippe conspired to falsify evidence against Ms. McGagh. One piece of evidence involves testimony by a Dr. Kohn."); *id.* at 4 ¶ 31 ("Defendant BCSA provided false evidence to the Court of Appeals and the Baltimore Attorney General's office in an effort to have Ms. McGagh's conviction reinstated."); *id.* at 5 ¶ 36 ("During

6

the resentencing hearing Defendant Lippe lied to the Court again."); *id.* at 5 ¶ 45 ("Defendant Lippe then convinced the alleged victim to request an open parole hearing, which he did."). While McGagh certainly argues that she was harmed by these actions and that these actions were unlawful, these actions were nevertheless performed in the prosecutors' advocative function. *See Carter v. Burch*, 34 F.3d 257, 263 (4th Cir. 1994) (finding a prosecutor absolutely immune from an allegation of "involve[ment] in a conspiracy to present false testimony") (citing *Imbler*, 424 U.S. at 416, 431); *Azeez v. Keller*, No. 5:06-CV-00106, 2012 WL 3231323, at *7 (S.D. W. Va. Aug. 6, 2012) (noting that "engaging in an out-of[-]court effort to control the presentation of witness' testimony" is an advocative function) (citing *Buckley*, 509 U.S. at 272).

Shellenberger's motion to dismiss will be granted on prosecutorial immunity grounds.  It is true that "when absolute prosecutorial immunity applies – as [the Court] find[s] it does here – it may in some cases lead to unfair results, 'leav[ing] the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty.'" *Annappareddy*, 996 F.3d at 139 (quoting *Imbler*, 424 U.S. at 427).  But this case illustrates exactly the basis for such a broad immunity: "harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust." *Imbler*, 424 U.S. at 423.

### 3.  Statutory Immunity

The Maryland Tort Claims Act (MTCA) is a limited waiver of the State's sovereign immunity, and it protects Maryland state personnel from tort suits.  *See* Md. Code Ann., Cts. & Jud. Proc. ("CJP") § 5-522(b); *see also Lee v. Cline*, 863 A.2d 297, 303 (Md. 2004).  It "provides in relevant part that 'State personnel,' including State's Attorneys [or an employee of an office of

a State's Attorney], 'are immune from suit in courts of the State and from liability in tort for a tortious act or omission that is within the scope of the public duties of the State personnel and is made without malice or gross negligence.'" *Nero*, 890 F.3d at 124 (emphasis deleted) (quoting CJP §5-522(b) and citing Md. Code Ann., State Gov't § 12-101(a)(8)). The "MTCA does not distinguish between constitutional torts and common law torts. Accordingly, the same standards of malice and gross negligence govern" state common-law tort claims and violations of state constitutional rights. *McDaniel v. Arnold*, 898 F. Supp. 2d 809, 849 (D. Md. 2012) (quoting *Newell v. Runnels*, 967 A.2d 729, 766 n.28 (Md. 2009)).

"For MTCA purposes, malice is 'conduct characterized by evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill-will or fraud.'" *Nero*, 890 F.3d at 127 (quoting *Barbre v. Pope*, 935 A.2d 699, 714 (Md. 2007)). "To establish malice, a plaintiff must show that the government official 'intentionally performed an act without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being to deliberately and willfully injure the plaintiff.'" *Id.* (quoting *Bord v. Baltimore County*, 104 A.3d 948, 964 (Md. App. 2014)). Maryland courts "have viewed gross negligence . . . 'as something *more* than simple negligence, and likely more akin to reckless conduct[.]'" *Barbre*, 935 A.2d at 717 (quoting *Taylor v. Harford County Dep't of Soc. Servs.,* 862 A.2d 1026, 1035 (Md. 2004)). The Maryland Supreme Court has explained:

> [G]ross negligence is [ ] an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them. Stated conversely, a wrongdoer is guilty of gross negligence or acts wantonly and willfully only when he inflicts injury intentionally or is so utterly indifferent to the rights of others that he acts as if such rights did not exist.

*Id.* (citing *Liscombe v. Potomac Edison Co.,* 495 A.2d 838, 846 (Md. 1985); *Romanesk v. Rose,* 237 A.2d 12, 14 (Md. 1968)); *see also Anne Arundel Cnty. v. Reeves*, 252 A.3d 921, 936 (Md.

8

2021).  "[C]onclusory allegations of gross negligence [a]re not enough to bring the claim outside of the immunity and non-liability provisions of the MTCA." *Barbre*, 935 A.2d at 717; *see also Nero*, 890 F.3d at 128 ("To get past [the State's Attorney Defendant's] MTCA-immunity defense, the [plaintiffs] must point to specific facts that raise an inference that [the State's Attorney's] actions were improperly motivated." (citations omitted)).

First, it is not entirely clear which state law claims McGagh brings against which defendants, or exactly which conduct alleged in the complaint supports each claim.  Regardless, Plaintiff's allegations in the complaint as to motive for all of the state law claims are too conclusory to overcome Shellenberger's MTCA statutory immunity defense.  *See, e.g.*, ECF 1, at 14 ¶ 120 ("The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.").  As such, Shellenberger is protected by statutory immunity from Plaintiff's state law claims and his motion to dismiss will also be granted on that basis.

## B.  The Court Will Deny McGagh's Motion for Leave to Amend as Futile.

The Federal Rules of Civil Procedure require courts to "freely give leave [to amend] when justice so requires." Fed. R. Civ. Pro. 15(a)(2).  While it is within the discretion of a district court to deny leave to amend, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962).  "Leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986) (citing *Foman*, 371 U.S. at 182).

A proposed amendment is futile if it is "clearly insufficient or frivolous on its face" or "if the [proposed amended] complaint fails to withstand Rule 12(b)(6) scrutiny." *In re Triangle Cap.*

9

*Corp. Sec. Litig.*, 988 F.3d 743, 750 (4th Cir. 2021) (citation omitted). Under Federal Rule of Civil Procedure 12(b)(6), dismissal is appropriate where the complaint "fail[s] to state a claim upon which relief can be granted."

McGagh's proposed amendments are futile. In the proposed amended complaint, McGagh names as defendants Lippe, Shellenberger, Wolf, and John Doe Defendants 1–10, and purports to bring the following claims, all pursuant to 42 U.S.C. § 1983: (1) a First Amendment retaliation claim against all defendants (count I); (2) a procedural due process claim for deprivation of property against Lippe and Shellenberger (count II); (3) an Equal Protection claim against Shellenberger for selective non-enforcement (count III); and (4) supervisory liability against Shellenberger for failure to intervene (count IV). *See* ECF 79-1, at 11.

McGagh attempts to argue that the claims in her proposed amended complaint "target separate post-conviction injuries (property loss, denial of police protection, migration of false stigma into civil matters) that do not imply the conviction itself is invalid." ECF 79, at 6 (emphasis removed) (arguing that "*Heck v. Humphrey*, 512 U.S. 477, 487 (1994) does not bar such claims").[5] But a review of McGagh's proposed claims belies her conclusory assertion. It is clear McGagh's claims center around her conviction and the defendants' roles in securing that conviction. McGagh's factual allegations concern the "prosecution's theory of intent," purported issues with the "surveillance footage," alleged destruction of evidence after sentencing, and purported "inflammatory characterizations" in the Presentence Investigation Report and findings of a Dr. Kohn, who McGagh appears to allege does not exist but who provided information relevant to her sentencing. *See* ECF 79-1, at 4–5 ¶¶ 17–29; *see also id.* at 8 ¶¶ 50–54, at 10–11 ¶ 67–72.

---

[5] The Court discusses the applicability of *Heck v. Humphrey* to the claims in the operative complaint below.

To the extent McGagh argues that her proposed amended complaint is viable because it involves alleged wrongdoing by the defendants in post-conviction proceedings, she is mistaken. Prosecutorial immunity still applies at the post-conviction stage where the prosecutor's actions are prosecutorial in nature. *See Robinson v. Frosh*, Civ. No. DKC-20-0754, 2021 WL 5909106, at *4 (D. Md. Dec. 14, 2021) (citing *Carter*, 34 F.3d at 263).

McGagh does attempt to raise a few claims that are not as closely linked to the judicial process (including post-conviction proceedings). McGagh alleges that Lippe "used his position and influence to interfere with Plaintiff's access to ordinary civil processes unrelated to any criminal prosecution." ECF 79-1, at 8 ¶ 55. Specifically, she asserts that "Lippe affirmatively inserted himself as a service or contact point in Plaintiff's foreclosure-related matters despite having no lawful or administrative role in those proceedings" resulting in delays in communications and information. *Id.* She contends that Lippe's alleged actions "interfered with [her] ability to protect and manage her property interests while she remained the lawful owner, and foreseeably contributed to her loss of access and control without a neutral process." ECF 79-1, at 9 ¶ 60. It is not entirely clear what specific actions McGagh alleges Lippe took or how these nondescript actions caused "loss of property access" or other, more specific, harm. These allegations are not sufficient to support a due process claim for property deprivation against Lippe or any of the other defendants.

As to Shellenberger, McGagh alleges that "Shellenberger, acting in a supervisory capacity, caused or permitted ordinary law-enforcement action to be withheld" after McGagh's house was "subjected to theft, unauthorized occupation, and removal of Plaintiff's belongings." ECF 79-1, at 9–10 ¶¶ 61–66. Even assuming these allegations are true, there is no constitutional right to the initiation of an investigation or prosecution. *See DeShaney v. Winnebago Cnty. Dep't of Soc.*

11

*Servs.*, 489 U.S. 189, 197 (1989) (holding that "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause"); *Sattler v. Johnson*, 857 F.2d 224, 227 (4th Cir. 1988) ("[Plaintiff's] counsel suggested that [Plaintiff] had an enforceable right as a member of the public at large and as a victim to have the defendants criminally prosecuted. He further urged that such a right was protected by the equal protection clause of the fourteenth amendment.  There is, of course, no such constitutional right[.]").  "A victim of a crime 'does not have a constitutional right to have the police investigate his case at all, still less to do so to his level of satisfaction.'"  *Harper v. Zerkle*, No. 3:24-CV-00324, 2024 WL 6838545, at *6 (S.D. W. Va. Aug. 13, 2024) (quoting *Rossi v. City of Chicago*, 790 F.3d 729, 735 (7th Cir. 2015)), *report and recommendation adopted,* No. 3:24-CV-324, 2025 WL 2336111 (S.D. W. Va. Aug. 13, 2025).  Because McGagh's proposed amended complaint does not state a viable claim for relief, amendment is futile and the motion for leave must be dismissed.

## II.   REMAINING CLAIMS AGAINST REMAINING DEFENDANTS

That leaves the § 1983 claims and state law claims against Lippe, Wolf, and the Doe defendants.

### A.  McGagh's § 1983 Claims Are Barred by *Heck v. Humphrey.*

The Court notes that soon after this action was filed, Judge Blake issued an order to show cause why this action should not be dismissed or stayed pending resolution of the matters still pending in state court, citing *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994).  *See* ECF 5, at 2 ("It is unclear from the complaint whether the criminal matter that arose out of the events described in the complaint is still pending or has been resolved in McGagh's favor.").  McGagh responded, *see* ECF 8, but it does not appear that her response was ever addressed.  Nevertheless, McGagh

appears to acknowledge the *Heck* problem, as she now seeks a stay rather than dismissal of these claims.  *See* ECF 73.

In *Heck v. Humphrey*, the Supreme Court held that to bring a § 1983 action for damages after a plaintiff has been convicted and/or imprisoned in the underlying criminal proceeding, the "plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]" 512 U.S. at 486–87.  If a claim "would necessarily imply the invalidity of [the plaintiff's] conviction or sentence," then it "must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* at 487.  "Through what has become known as the 'favorable termination requirement,' the Court ensured that § 1983 litigation would not result in inconsistent judgments or retrials of old state convictions through pathways other than those delineated by Congress." *Griffin v. Baltimore Police Dep't*, 804 F.3d 692, 695 (4th Cir. 2015) (citing *Nelson v. Campbell,* 541 U.S. 637, 646–47 (2004)); *see also Thompson v. Clark*, 596 U.S. 36, 49 (2022) (holding that a "§ 1983 [claim] for malicious prosecution [typically brought under the Fourth Amendment] does not require the plaintiff to show that the criminal prosecution ended with some affirmative indication of innocence[,] only . . . that the criminal prosecution ended without a conviction").  All of Plaintiff's § 1983 claims, including Count I (§ 1983 claim for due process violation), Count II (§ 1983 claim for false imprisonment), Count III (§ 1983 claim for coerced confession), Count IV (§ 1983 claim for Sixth Amendment violation), Count V (§ 1983 Equal Protection claim), Count VI (§ 1985(3) conspiracy to deprive constitutional rights),[6] Count VII (§

---

[6] The *Heck* bar also applies to § 1985(3) claims. *See Poston v. Shappert*, 222 F. App'x 301 (4th Cir. 2007) (affirming dismissal of § 1983 and § 1985(3) claims because favorable termination

1983 conspiracy to deprive constitutional rights),[7] Count VIII (§ 1983 denial of access to courts), Count IX (§ 1983 failure to intervene), imply the invalidity of her conviction.  These claims are thus barred because her conviction has been upheld by Maryland's highest court.  *See State v. McGagh*, 244 A.3d 1117, 1139 (Md. 2021).  While McGagh argued in her response to the original order to show cause that a § 1983 claim for malicious prosecution under the Fourth Amendment may still proceed "without a showing that the criminal prosecution showed some affirmative indication of innocence," ECF 8, at 3, she overstates the holding in *Thompson*.  There, the Supreme Court held that such a claim could proceed so long as "the criminal prosecution ended *without a conviction*."  596 U.S. at 49 (emphasis added).  But McGagh's prosecution *did* end with a conviction.  *See McGagh*, 244 A.3d at 1139.  Her § 1983 (and § 1985(3)) claims are still barred.

Perhaps acknowledging the critical issues with the § 1983 claims, McGagh seeks a stay of these claims, rather than dismissal, because she "has filed, or is contemporaneously filing, a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging the validity of the state conviction implicated by certain allegations in this action."  ECF 73, at 1.  However, despite that representation in January of this year, McGagh has not filed such a petition.  Regardless, McGagh's § 1983 claims, which implicate the validity of her sentence, do "not accrue until the conviction or sentence has been invalidated."  *Heck*, 512 U.S. at 489–90; *see also id.* at 489 ("We do not engraft an exhaustion requirement upon § 1983, but rather deny the existence of a cause of action. Even a

---

requirement not met under *Heck*) (citing *Heck,* 512 U.S. at 486–87; *Stephenson v. Reno,* 28 F.3d 26, 26-27 & n.1 (5th Cir. 1994) (per curiam)).

[7] This count refers to a "robbery," after which McGagh alleges "Wolf and ASA reached an agreement amongst themselves to frame Ms. McGagh for the crime, and to thereby deprive Ms. McGagh of his constitutional rights[.]" ECF 1, at 11 ¶ 93.  A robbery is not mentioned elsewhere in the complaint.  The rest of the paragraphs under this count make clear that McGagh intends to challenge the "depriv[ation] . . . of exculpatory materials to which she was lawfully entitled and which would have led to her more timely exoneration of the false charges[.]" *Id.* ¶ 94.

prisoner who has fully exhausted available state remedies has no cause of action under § 1983 unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus."). There is therefore no basis to stay these claims, which have not yet accrued. This motion will be denied.

### B. The Reasoning of Shellenberger's Motion to Dismiss Also Appears to Apply to the Claims Against Lippe.

Though Lippe did not join Shellenberger's motion, the reasoning as to both prosecutorial and statutory immunity applies in equal force to him, *see* Md. Code Ann., State Gov't § 12-101(a)(8). To the extent any of Plaintiff's claims hinge on the alleged non-disclosure of a business relationship between Defendants Wolf and Lippe and that the non-disclosure constituted an ethical violation, "[a]lleged violations of ethical rules do not strip prosecutors of absolute immunity for advocative conduct." *Dickerson v. 15th Jud. Cir. Solicitor's Off.*, No. 4:25-CV-6192-JD-SVH, 2026 WL 102947, at *3 (D.S.C. Jan. 14, 2026) (citing *Imbler*, 424 U.S. at 427–28). "Section 1983 does not provide a cause of action for violations of state professional conduct rules, and such allegations do not transform trial-related prosecutorial decisions into administrative acts." *Id.* There is therefore good reason to apply the same reasoning to McGagh's claims against Lippe. *See Luy v. Baltimore Police Dep't*, 326 F. Supp. 2d 682, 693 (D. Md. 2004) (noting that while a defendant "did not join in the pending motion to dismiss, the same arguments would preclude all of the claims asserted against her" and indicating that the claims would be dismissed unless the plaintiff showed good cause to the contrary), *aff'd,* 120 F. App'x 465 (4th Cir. 2005); *see Hollis v. Amazon Sortation*, Civ. No. 24-1870-BAH, 2025 WL 1920809, at *4 (D. Md. July 10, 2025) (dismissing an action in its entirety even though one defendant "ha[d] not moved to dismiss as it has not been served" because "the analysis herein applies with equal vigor to the claims against [the non-moving defendant]").

**C. The Court Intends to Decline Supplemental Jurisdiction Over the Remaining State Law Claims Against Wolf and the Doe Defendants.**

The remaining claims all arise under Maryland state law, and there does not appear to be an independent basis for this Court to exercise jurisdiction based on diversity jurisdiction.[8] District courts "may decline to exercise supplemental jurisdiction" under certain circumstances, including when "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "[A] district court has inherent power to dismiss the case or, in cases removed from State court, to remand, provided the conditions set forth in § 1367(c) for declining to exercise supplemental jurisdiction have been met." *Hinson v. Norwest Fin. S.C., Inc.*, 239 F.3d 611, 617 (4th Cir. 2001). "Among the factors that inform this discretionary determination are convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995) (citations omitted). The Fourth Circuit has recently emphasized that "[a]s a general rule, 'when a district court dismisses all federal claims in the early stages of litigation . . . it should decline to exercise jurisdiction over any remaining pendent state law claims by dismissing those claims without prejudice.'" *Poppleton Now Cmty. Ass'n, Inc. v. La Cite Dev., LLC*, No. 25-1770, --- F.4th ---, 2026 WL 1204639, at *6 (4th Cir. May 4, 2026) (quoting *Henderson v. Harmon*, 102 F.4th 242, 251 (4th Cir. 2024)). Despite the numerical age of this case, it is still in its infancy as not all of the defendants have been served, and the case has not proceeded to discovery. With dismissal of the federal claims, then, binding circuit precedent counsels in favor of declining to exercise

---

[8] McGagh is a citizen of Maryland. *See* ECF 1, at 1 ¶ 1. McGagh alleges that Wolf is "employed by Baltimore County Police Department" and can be served at an address in Owings Mills, Maryland. *Id.* ¶ 4. McGagh further asserts that "[t]he parties reside in this judicial district[.]" *Id.* at 2 ¶ 9.

supplemental jurisdiction over the remaining state law claims against Wolf and the Doe

Defendants.[9]

### D. McGagh Will Be Directed to Show Cause Why The Complaint Should Not Be Dismissed as Described Herein.

The Court will afford McGagh one final opportunity to show good cause why the complaint

should not be dismissed in its entirety, applying the same prosecutorial and statutory immunity

discussed above to Lippe, dismissing the § 1983 claims as barred by *Heck v. Humphrey*, and

declining to exercise supplemental jurisdiction over the state law claims against Wolf and the Doe

Defendants. *See Luy*, 326 F. Supp. 2d at 693; *see Hollis*, 2025 WL 1920809, at *4. She will be

directed to do so within fourteen days of the date of this memorandum opinion and accompanying

order.

---

[9] The Court also notes that the allegations against Wolf and the Doe defendants appear to suffer significant pleading deficiencies. The allegations against Wolf are conclusory and concern his alleged un-disclosed business relationship with Lippe, his alleged inadequate "training to investigate . . . sexual assault crimes," his alleged pursuit of an unexplained "theft by deception case," allegations of a conspiracy "to frame Ms. McGagh for the crime," and his alleged refusal to investigate crimes. ECF 1, at 3 ¶¶ 14–20, at 8 ¶ 67, at 11 ¶ 93, at 12 ¶¶ 108–09. The complaint's allegations against the Doe Defendants are similarly sparse. *See* ECF 1, at 11 ¶ 95 ("In this manner, the Defendant Officers, acting in concert with other unknown coconspirators, including persons who are not members of the Baltimore County Police Department, have conspired by concerted action to accomplish an unlawful purpose by an unlawful means."); *id.* at 13 ¶ 111 ("In the manner described above, during the constitutional violations described above, one or more of the Defendants (and other as-yet-unknown Baltimore County Police Officers) stood by without intervening to prevent the misconduct."); *id.* at 14 ¶ 123 ("As described more fully in the preceding paragraphs, Defendants, acting in concert with other known and unknown co-conspirators, conspired by concerted action to accomplish an unlawful purpose by unlawful means.").

To the extent McGagh has attempted to amend her complaint in the past to name these individuals, *see* ECF 57-1 (proposed amended complaint accompanying motion for leave to amend denied as moot); ECF 47 (proposed amended complaint stricken for failure to file a motion for leave to amend), she has never actually named them in an operative complaint. Further, her most recent proposed amended complaint, ECF 79-1, drops all the state law claims.

### III.    DISCOVERY-RELATED MOTIONS

McGagh has also recently filed three discovery-related motions, including the motion "for in camera review of withheld OAG documents," "production pursuant to the crime-fraud exception," "sanctions for fraudulent [Maryland Public Information Act] production," and "disqualification of Wendy L. Schiff as defense counsel," ECF 87, the "emergency motion for sanctions for spoliation of evidence, compelled sworn disclosure of records disposition, and in camera review of withheld and redacted materials," ECF 88, and a motion for sanctions, ECF 90. All three of these motions will be denied.  To the extent McGagh challenges responses to public records requests, those are not within the scope of this suit.  *See, e.g.*, *Prince William Cnty. Sch. Bd. v. Lassiter*, No. 1:24-CV-610 (RDA/LRV), 2025 WL 3187290, at *10 (E.D. Va. Nov. 13, 2025) ("As courts often instruct litigants, parties must 'ensure that their requests for relief are tied to the counts in their complaints.'" (quoting *Preston v. Bd. of Trs. Of Chicago State Univ.*, 2015 WL 327369, at *9 (N.D. Ill. Jan. 26, 2015))).  Further, discovery has not yet commenced in this case. *See* Loc. R. 104.4 (D. Md. 2025) (noting that "discovery shall not commence and disclosures need not be made until a scheduling order is entered").

### IV.    CONCLUSION

For the foregoing reasons, Shellenberger's motion to dismiss, ECF 77, is GRANTED. Plaintiff's first two motions for leave to amend, ECFs 57 and 72, the motion for extension of time and for alternative service, ECF 80, and to consolidate, ECF 59, are DENIED AS MOOT. McGagh's latest filed motion for leave to amend, ECF 79, is DENIED on the merits.  The motion to stay *Heck*-barred claims, ECF 73, is DENIED.  The discovery-related motions at ECFs 87, 88, and 90 are DENIED.

McGagh is directed to show cause within fourteen (14) days why this action should not be dismissed in its entirety, as the Court intends to dismiss the claims against Lippe for the same reasons articulated in Shellenberger's motion to dismiss, to dismiss all the § 1983 claims as barred by *Heck v. Humphrey*, and to decline supplemental jurisdiction as to the remaining state law claims against Defendant Wolf and the Doe Defendants.  The remaining motions will be resolved in due course depending on McGagh's response to this memorandum opinion and accompanying implementing order.

A separate implementing order follows.

_____/s/_____

Brendan A. Hurson
United States District Judge
